IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2015

**STATE OF TENNESSEE v. NICKY LOWE EVANS**

**Direct Appeal from the Circuit Court for Madison County**
**No. 13-575     Donald H. Allen, Judge**

**No. W2014-01459-CCA-R3-CD  -  Filed December 9, 2015**

The appellant, Nicky Lowe Evans, pled guilty in the Madison County Circuit Court to two counts of theft of property valued $10,000 or more but less than $60,000, a Class C felony; four counts of theft of property valued $1,000 or more but less than $10,000, a Class D felony; and five counts of operating a home improvement business without a license, a Class A misdemeanor.  After a sentencing hearing, the appellant received an effective sentence of ten years, eleven months, and twenty-nine days in confinement.  On appeal, the appellant contends that the length and manner of service of his sentences is excessive.  Based upon the record and the parties' briefs, we conclude that the appellant's conviction in count one, theft of property valued $10,000 or more but less than $60,000, must be reversed and the charge dismissed.  The appellant's sentences for his remaining convictions are affirmed.  However, the judgments of conviction for counts seven through eleven reflect the incorrect convicted offense.  Therefore, the case is remanded to the trial court for the correction of those judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part, Reversed in Part, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Joseph T. Howell (on appeal), Jackson, Tennessee, and Michael Ainley (at trial), Paris, Tennessee, for the appellant, Nicky Lowe Evans.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.  Factual Background

In September 2013, the Madison County Grand Jury returned an eleven-count indictment, charging the appellant with felony theft in counts one through six and impersonating a licensed professional, a Class E felony, in counts seven through eleven. On November 25, 2013, the appellant pled guilty as charged in counts one and three to theft of property valued $10,000 or more but less than $60,000, a Class C felony, and in counts two, four, five, and six to theft of property valued $1,000 or more but less than $10,000, a Class D felony.  In counts seven, eight, nine, ten, and eleven, the appellant orally consented to an amendment of the indictment and pled guilty to operating a home improvement business without a license, a Class A misdemeanor.

During the plea hearing, the State gave a factual account of the crimes.  Regarding count one, the State advised the trial court as follows:

> Your, Honor, if it please the Court, in Count 1 the State would show that on or about January through October of 2012 while here in Madison County, the defendant . . . did knowingly obtain or exercise control of property greater than the value of $10,000 without the effective consent of the owners James Wiley, Sheila Pflueger, Gilford Yarbro, Mike Mandels and Dennis and Susan Christiansen with intent to deprive them of that property.

Regarding counts two through six, in which the victims were named as James E. Wiley, Sheila Pflueger, Gilford Yarborough, Mike Mandles, and Dennis and Susan Christensen,[1] respectively, the State advised the court that the victims entered into contracts with the appellant's business, Inspector Roofing, and paid the appellant or his two employees for roofing work on their homes that was never performed.  Wiley paid $4,420.22 for contracted work, Pflueger paid $10,685.13, Yarborough paid $3,300, Mandles paid $3,995, and the Christensens paid $5,000.  As to counts seven through eleven, the State advised the court that the appellant provided a contractor license number that was found to be fraudulent, "meaning the defendant was operating this business purported to be Inspector Roofing without the proper license from the State of Tennessee, specifically

---

[1] We note that several names, including the appellant's first name, are spelled differently in the plea and sentencing hearing transcripts than they appear in the indictment.  However, we have chosen to spell the names as they appear in the indictment.

home improvement/roofing contractor license for which he would need licensure to operate such a business that he did not have while operating here in Madison County."

Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences after a sentencing hearing. However, during the plea hearing, the State recommended that the appellant serve all of the sentences concurrently with each other and a prior effective sentence of twenty-seven months in Robertson County. The State advised the court that the recent Robertson County convictions "[arose] out of the same planned scheme."

At the sentencing hearing, James Wiley testified that he never dealt personally with the appellant but that he paid $4,402.22 to Van Clendenin, who worked for Inspector Roofing, in June 2012. Inspector Roofing was supposed to repair the roof on Wiley's home, but no work was ever done. Wiley tried contacting Inspector Roofing four or five times, but "all [he] got was an answering service." Wiley requested that the trial court sentence the appellant to one year in jail. On cross-examination, Wiley testified that he gave Inspector Roofing a check from his insurance company for $4,402.22. He acknowledged that he did not lose any money "out-of-pocket" but said, "If I ever have my roof fixed, I'll have to pay that money."

Sheila Pfleuger testified that in October 2012, State Farm gave her a check for $10,685.13, which she endorsed and gave to Brook Madden, the appellant's girlfriend. Inspector Roofing was supposed to replace the roof on Pfleuger's home, and Madden promised to have shingles delivered to Pfleuger's house. About one week later, Pfleuger researched Inspector Roofing and "saw all of the reviews on the internet calling them criminals and there is no services being rendered." She said that she began contacting Inspector Roofing and that someone kept promising the work was going to start. However, in December 2012, Pfleuger "gave up." She later learned that the appellant and Inspector Roofing were in bankruptcy, and she hired an attorney to represent her in the bankruptcy proceeding. At the time of the sentencing hearing, Pfleuger had not been reimbursed any of the money she paid Madden. Pfleuger requested that the appellant serve his sentences in prison.

Gina Mandels, Mike Mandels's wife, testified that in June 2012, "[a] salesman named Van" came to their home and that they paid Inspector Roofing $3,995 as a deposit to replace their roof. The Mandels never dealt with the appellant personally but learned about him from the internet and by talking to Brooke Madden when they tried to get Inspector Roofing to do the work. Mrs. Mandels requested restitution from the appellant and that he serve his sentences in confinement, stating that the appellant "continued to live a pretty nice life with our money. He needs to pay for that."

Gilford Yarborough testified that in March 2012, the appellant and another salesman stopped by Yarborough's house. The appellant told Yarborough that "he saw some shingles had blown off" and offered to inspect Yarborough's roof. The appellant gave Yarborough an estimate of more than $9,000 to repair the roof and made an appointment for Yarborough's insurance agent to inspect it. On May 9, 2012, Yarborough wrote a personal check to Inspector Roofing in the amount of $3,300 as a deposit for the repairs. Inspector Roofing never repaired the roof, so Yarborough had to pay another roofing company to do the work. He acknowledged that he was "still out" the money he paid to Inspector Roofing. He requested restitution and "whatever the law allows the maximum for prison time."

Susan Christiansen testified that in July 2012, two men stopped by her house and said they had seen damage to her roof. One of the men was named "Van." Mrs. Christansen's husband wrote a personal check to Inspector Roofing in the amount of $5,000 as a deposit for a new roof, and the work was supposed to start within thirty days. When no work was done, the Christiansens began calling Inspector Roofing and were told the company was "backed up." Mrs. Christansen said that she never dealt with the appellant but that she "dealt with a woman on the phone." The Christiansens later had another company replace their roof, and their insurance company paid for the new roof. However, the Christiansens were never reimbursed for their deposit to Inspector Roofing.

The State introduced the appellant's presentence report into evidence. According to the report, the then thirty-nine-year-old appellant was twice divorced with three children aged nine, ten, and twenty years old. The report showed that the appellant left school after the ninth grade because he needed to work, that he worked as a salesman for Lexus of Nashville from December 2003 to December 2006, and that he became the "owner/contractor" of Inspector Roofing in December 2009. In the report, the appellant described his physical health as good. He stated that he began consuming alcohol when he was thirteen years old and that he did not commit crimes when he was intoxicated but that "a problem alcohol caused was fighting." The report showed that in November 2013, the appellant was convicted in Robertson County of four counts of theft of property valued $1,000 or more but less than $10,000 and received an effective sentence of twenty-seven months to be served in confinement. The report also showed that the appellant had two prior convictions of contributing to the delinquency of a minor and one conviction of simple assault.

The appellant testified in his own behalf that he started Inspector Roofing with his wife and brother; that they "grew the company from nothing"; and that they had "over 600 satisfied and happy customers," including District Attorney General Hansel

McCadams and Sheriff Monte Belew of Paris, Tennessee. However, at some point, the company "hit a few bumps in the road." The appellant said that his brother fell off a roof and filed a worker's compensation claim against him, which the appellant settled for $180,000. Numerous monetary judgments were entered against the appellant, and he had no choice but to file for bankruptcy. The appellant stated that "there were 13 houses that I didn't put on through this whole thing," that he did not intend to deceive anyone, and that he was never taught to steal from people. He said he would "make it right" and "pay the money back."

On cross-examination, the appellant testified that he started Inspector Roofing in 2008 in Hendersonville and expanded the business to Madison County. The company office was located in Jackson and was open for six or seven months. Brooke Madden worked in the office and collected money from customers. Van Clendenin also worked for the company and accepted money from customers. The appellant said that Madden and Clendenin "brought money in that was deposited through the company" but that the appellant was "100 percent responsible for what happened with that money" and "[m]ore or less" made all of the business decisions.[2] The appellant said that he tried to pull the company "out of it" when the company began to fail. However, after the company developed a bad reputation on the internet, the appellant could not do anything to save the business.

The appellant testified that he "didn't know exactly what license we needed to carry" because "what we done was negotiated insurance claims and then we subcontracted out work out to [licensed] contractors." He acknowledged that he never had a contractor's license but said that he had "liability insurance, bonding and everything else that we needed." He said that he had a businesss license in Madison County and that "[w]e tried our best to put [the roofs] on, but we just didn't have the money to do it." He said he would pay back the victims "[a]s soon as I can get out there and go to work." He stated that he usually earned $100,000 to $150,000 per year and that he thought he could repay the victims within a couple of years.

At the conclusion of the proof, the trial court noted the State's recommendation that the appellant serve all of the sentences in this case concurrently with each other and concurrently with his twenty-seven-month sentence in Robertson County. The court announced that it was not going to accept the recommendation, stating that "I just don't find that in the interest of justice that that would be appropriate in this matter." The court

---

[2] During the guilty plea hearing, the State described Madden and Clendenin as "indicted codefendants." Counts seven through eleven of the indictment alleged that the appellant, Clendenin, and a third name that has been redacted, presumably that of Madden, impersonated a licensed professional in violation of Tennessee Code Annotated section 39-16-302.

gave the appellant the opportunity to withdraw his guilty pleas and took a brief recess in order for defense counsel to discuss the matter with the appellant. When the hearing resumed, counsel advised the court that the appellant did not want to withdraw his pleas and wanted to proceed with sentencing.

The trial court stated that it had considered the evidence at the plea and sentencing hearings, the appellant's presentence report, the principles of sentencing, the arguments regarding sentencing alternatives, and the nature and characteristics of the criminal conduct involved. The trial court found the following enhancement factors applicable to the appellant's felony convictions: (1), that the defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range; (2), that the defendant was a leader in the commission of the offenses involving two or more criminal actors; (13), that the defendant was "on some kind of pretrial release" for contributing to the delinquency of a minor when he committed "the majority" of the offenses in the instant case; and (14), that "[t]he defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense" because he was "holding himself out as . . . a licensed contractor, which he was not." Tenn. Code Ann. § 40-35-114(1), (2), (13), (14). The court gave factors (1), (2), and (13) great weight and factor (14) moderate weight. In mitigation, the court applied factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury, and gave the factor slight weight. See Tenn. Code Ann. § 40-35-113(1). The court also applied mitigating factor (13), the catchall provision, for the appellant's pleading guilty, accepting responsibility for his actions, and employment history. See Tenn. Code Ann. § 40-35-113(13).

The trial court sentenced the appellant as a Range I, standard offender to concurrent, six-year sentences for the Class C felony theft convictions in counts one and three and to concurrent, four-year sentences for the Class D felony theft convictions in counts two, four, five, and six. For the misdemeanor convictions of operating a home improvement business without a license in counts seven through eleven, the trial court sentenced the appellant to concurrent sentences of eleven months, twenty-nine days with seventy-five percent release eligibility. The trial court ordered that the appellant serve the effective six-year, four-year, and misdemeanor sentences consecutively to each other for a total effective sentence of ten years, eleven months, and twenty-nine days. The trial court also ordered that the appellant serve the effective sentence consecutively to his twenty-seven-month sentence in Robertson County and that he pay restitution to the victims for their "out-of-pocket expenses," which "totals about $27,400 . . . or a little over that." The court denied the appellant's request for alternative sentencing and ordered that he serve the sentences in confinement.

## II. Analysis

The appellant contends that the length of his sentences is excessive, that the trial court failed to state its basis for ordering consecutive sentencing, and that the trial court erred by failing to grant his request for alternative sentencing. The State argues that the trial court properly sentenced the appellant.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn.Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in § 40–35–113 and 40–35–114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal

conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Although not raised by appellant, we must first address count one of the indictment. Count one reads that the appellant:

> on or about January through October of 2012, in Madison County, Tennessee, and before the finding of this indictment, did knowingly obtain and/or exercise control over property, equal to or over the value of Ten Thousand Dollars ($10,000.00), without the effective consent of the owners, JAMES E. WILEY, SHEILA PFLEUGER, GILFORD YARBOROUGH, MIKE MANDLES, and DENNIS and SUSAN CHRISTENSEN, with the intent to deprive the said owners thereof, in violation of T.C.A. §39-14-103, all of which is against the peace and dignity of the State of Tennessee.

After the appellant testified at the sentencing hearing, the State advised the trial court as follows:

> [Count 1] seems to be an overarching count. I have tried to understand how it was indicted this way and I don't really have a satisfactory answer, but Your Honor can see from the counts of the indictment that there is a Count 1 that Your Honor will see mentions all five victim names and then they are individually mentioned in Count 2, 3, 4, 5 and 6. . . . I think it would be appropriate for the Court to merge those in some way. I would suggest letting Counts 2 through 6 stand for the individual. . . . The first one is the one that I'm afraid we will run into a double jeopardy issue with charging him for the same crime essentially twice. . . . I think it may be more proper if the Court sentences him based on Counts 2 through 6 for each individual count that was done instead of one overarching count. I think they are maybe alternative theories, but that would be what I would suggest as far as merging the counts.

After the parties gave their closing arguments regarding sentencing, the trial court announced that it was going to take the matter under advisement and announce the

sentences at a later date. When the sentencing hearing resumed three days later, the trial court failed to address the State's concerns regarding count one and sentenced the appellant to six years for the Class C felony theft.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). In this case, the State properly charged the appellant in counts two through six for the separate acts of theft from each of the five victims. However, the State also charged the appellant in count one with a single act of theft for his collectively taking money from all of the victims. In effect, the State charged the appellant with two counts of theft as to each victim for his taking "identical property from the identical person with the identical intent." State v. Coleman, 891 S.W.2d 237, 239 (Tenn. Crim. App. 1994). As pointed out by the State during the sentencing hearing, the prohibition against double jeopardy does not allow the appellant's conviction in count one. See U.S. Const. amend. V; Tenn. Const. art. I, § 10. Therefore, that conviction is reversed, and the charge is dismissed.

Regarding the appellant's claim that the length of his sentences is excessive, the appellant states that the trial court "erred when it weighed and applied the enhancement factors." However, the appellant has waived this issue because he has failed to make any argument regarding the trial court's misapplication of any enhancement or mitigating factors. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Furthermore, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancment and mitigating factors." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

As to the appellant's claim that the trial court failed to state its basis for ordering consecutive sentencing, the trial court specifically stated that it was ordering consecutive sentencing based upon the appellant's being "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). The appellant's presentence report shows that he has four prior felony convictions and three prior misdemeanor convictions. Therefore, he is not entitled to relief on this issue.

Finally, regarding the trial court's denial of alternative sentencing, the trial court stated that the victims "paid this gentleman, Mr. Evans, basically a little over $27,000 and none of them got a roof. . . . They are out completely all of the money that they paid." The trial court noted that, according to the presentence report, the appellant bought a home valued at $305,900 in 2010 but that "there's been no plan suggested on how he would pay these victims back."[3] The court also noted that the appellant testified that he

---

[3] According to the appellant's presentence report, he did not list a residential address on the

- 10 -

received money from thirteen people who paid for new roofs but never received them, "[s]o, apparently there [are] some other victims out there." The court stated that "this was truly a scheme by the defendant to defraud people and never put any effort into putting roofs on their house." The court found that the appellant lacked a potential for rehabilitation and that the interests of society in being protected from this defendant's possible future criminal conduct was great. The court also found that confinement was particularly suited to provide an effective deterrent to others likely to commit similar offenses, stating that "I have to look at what he's done not only in this county, but in Robertson County." Accordingly, we conclude that the trial court did not abuse its discretion by denying alternative sentencing.

We note that the judgments of conviction for counts seven through eleven reflect that the appellant pled guilty to contracting without a license pursuant to Tennessee Code Annotated section 62-6-120. However, the appellant's signed guilty plea form shows that he agreed to plead guilty to the "[a]mended charge" of "operating a [home improvement] business w/o license" pursuant to Tennessee Code Annotated section 62-6-512. The State also advised the trial court during the plea hearing that the appellant was pleading guilty to violating Tennessee Code Annotated section 62-6-512. Therefore, the case is remanded to the trial court for correction of the judgments.

### III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the appellant's theft conviction in count one must be reversed and the charged dismissed. We note that our reversal does not affect the appellant's total effective sentence because the trial court ordered that he serve his six-year sentences in counts one and three concurrently. The appellant's sentences for the remaining convictions are affirmed. However, the case is remanded to the trial court for the correction of the judgments in counts seven through eleven to reflect that the appellant was convicted of operating a home improvement business without a license.

_____
NORMA MCGEE OGLE, JUDGE

---

personal questionnaire for the report. However, one of the appellant's ex-wives advised the preparer of the report that the appellant was still living in the home.